**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ALBERT G. BARELA, *by his next friend,*
*Cyndi Barela*,

      Plaintiff,

v.                                        Civ. No. 22-96 GJF/GBW

THE CITY OF HOBBS, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS**
**FOR PARTIAL SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS**

THIS MATTER is before the Court upon Defendants' motions for (1) Partial Summary Judgment on the Basis of Qualified Immunity as to Counts I and IV [ECF 39] and (2) Judgment on the Pleadings as to Count VI [ECF 46]. The motions are fully briefed. *See* ECFs 47, 48, 57, 62. The Court heard extensive argument on these motions on November 8, 2022. *See* ECF 71 ("Tr."). Fundamentally, the motions raise the question of whether Plaintiff has proffered admissible evidence sufficient to permit the inference that Hobbs police officers arrested and charged him without probable cause. As explained below, the Court concludes that Plaintiff has not done so. Instead, the video evidence before the Court demonstrates as a matter of law that the officers had probable cause to believe Plaintiff committed three state misdemeanor offenses before detaining and arresting him: (1) riding his bicycle at night without the required light and reflector, (2) riding his bicycle on the wrong side of the road, and (3) resisting and evading the officers by attempting to flee from them on his bicycle. The Court will therefore **GRANT** the motions by **DISMISSING WITH PREJUDICE** Counts I (Unlawful Arrest under the Fourth Amendment), IV (Malicious Prosecution under the Fourth Amendment), and VI (Malicious Prosecution under the New Mexico Constitution).

## I.  BACKGROUND[1]

Around 8:30 p.m. on January 20, 2021, Hobbs Police Department Officers Brandon Marinovich and Robert Still were driving separate marked police vehicles looking for a male suspect in a blue jacket/shirt and jeans who had "broke[n] a window at [his girlfriend's] home following a [domestic] dispute and [had taken] off approximately 5 minutes [previously]."  ECFs 39/47 at ¶¶ 1–4, 10.[2]  While driving northward on North Grimes Street, approximately 1/4 mile from the girlfriend's home, Marinovich observed an adult male riding his bicycle southward without any lights and against the flow of oncoming traffic—albeit on a narrow sidewalk that immediately abutted the road's two northbound lanes.  *Id.* at ¶¶ 4–5, 9; Marinovich Dash Cam 1 [Pl.'s Ex. E] ("MDC 1") at 00:00–00:20.  The bicyclist, at some point identified to be Plaintiff, appeared to be wearing a blue jacket and jeans as he passed by Marinovich.  ECFs 39/44 at ¶ 8; MDC 1 at 00:00–00:02.  Marinovich then "radioed Dispatch that he was going to investigate [Plaintiff]" regarding his lack of "lights at night" and the domestic dispute call.  ECFs 39/44 at ¶ 10.

### A.  The Arrest

After performing two u-turns, Marinovich was again driving his vehicle northward towards southbound Plaintiff.  MDC 1 at 00:04–00:30.  Marinovich then activated the vehicle's emergency

---

[1] The operative facts set forth in this section are (1) affirmatively admitted by the opposing party; (2) not "specifically controverted" by the opposing party, D.N.M.LR-Civ. 56.1(b); and/or (3) taken from the video evidence, with the Court "accept[ing] the version of the facts portrayed in the video, but only to the extent that it 'blatantly contradict[s]' [Plaintiff's] version of events," *Emmett v. Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).  Any other dispute of fact between the parties not mentioned in this summary is one the Court considers immaterial.

[2] Defendants contend the suspect was reported to be wearing a blue jacket.  *See* ECF 39 at ¶ 3 (citing Hobbs Police Department Daily Activity Log's Computer-aided dispatch (CAD) comments from January 20, 2021 [ECF 39-2], stating the subject had "BLU JACKET BLU JEANS" [sic]).  Plaintiff, however, contends the suspect was wearing a blue *shirt*.  *See* ECF 47 at ¶¶ 3, 8 (citing Still's June 28, 2022, deposition [ECF 47-3] at 22:13–18 in which Still recalls looking for someone with "a blue shirt and jeans").  Whether the officers were looking for someone with a blue jacket or instead a blue shirt is immaterial to the Court's analysis.

lights and stopped on the right-most side of the road, with the front of his vehicle facing Plaintiff. ECFs 36/44 at ¶¶ 11–12; MDC 1 at 00:20-00:32.  Plaintiff briefly left the narrow sidewalk to ride in the street and continued to cycle directly toward Marinovich's vehicle.  Still Dash Cam [Pl.'s Ex. M] ("SDC") at 00:00–00:13.  Plaintiff, however, did not stop—but rather "rode his bicycle [back up onto the sidewalk and] around the right front side of [Marinovich's] squad car"—and "acknowledged [Marinovich] by raising the middle finger of his right hand and flipping [Marinovich] off as he rode by" and yelled at Marinovich.  ECFs 36/44 at ¶ 13; MDC 1 at 00:30-00:34; SDC at 00:00–00:13.[3]  Marinovich then deactivated his emergency lights and turned his vehicle around to head southward in pursuit of Plaintiff.  ECFs 36/44 at ¶ 15; Marinovich Dash Cam 2 [Pl.'s Ex. K] ("MDC 2") at 00:15–00:30.  Meanwhile, Plaintiff rode off the sidewalk and against traffic toward the far side of the four-lane road—cycling in the same general southward direction, while moving to the right-most side of the southbound lanes.  MDC 2 at 00:28–00:36; SDC at 00:30–00:37.

Immediately after turning his vehicle around, Marinovich reactivated his emergency lights and followed Plaintiff for several seconds; Marinovich then pulled ahead of Plaintiff, stopping directly in his path with the front of the vehicle angled towards the sidewalk.  ECFs 36/44 at ¶ 15; MDC 2 at 00:27–00:41; SDC at 00:24–38.  Again, Plaintiff did not stop.  ECFs 36/44 at ¶ 18; SDC at 00:33–00:41.  Instead, he "maneuvered his bicycle around Officer Marinovich's squad car" and continued southward—but now towards the opposite side of the street.  ECFs 36/44 at ¶¶ 18–19; SDC at 00:36–00:44.  And while Plaintiff was doing this, Marinovich "got out of his squad car and began to pursue [Plaintiff] on foot."  ECFs 36/44 at ¶ 19; SDC at 00:38–00:43.  "[I]dentify[ing]

---

[3] Marinovich's dashboard camera did not audio-record the exact words Plaintiff yelled.  *See* MDC 1 at 00:30-00:34. Marinovich, however, wrote in the criminal complaint that Plaintiff yelled "[f]uck you, mother fucker" while flipping him off.  ECF 39-13 at 1.  Regardless, the exact words that Plaintiff yelled are immaterial to the Court's analysis.

himself as HPD [Hobbs Police Department]," Marinovich "yelled for [Plaintiff] to stop." ECFs 36/44 at ¶ 21. But Plaintiff did not stop and instead continued riding away from Marinovich. *Id.*; SDC at 00:39–00:44.

Within a few seconds, Marinovich caught up to Plaintiff and grabbed him, but then "lost his grip" and "fell forward onto the pavement pushing the bicycle and [Plaintiff] in the other direction as [Marinovich] fell." ECFs 36/44 at ¶¶ 22–23; SDC at 00:39–00:48. Plaintiff also "ended up on the pavement." ECFs 36/44 at ¶ 24; SDC at 00:44–00:48. Officer Still, who had been following closely behind Marinovich, ran up and assisted Marinovich in handcuffing Plaintiff. ECFs 36/44 at ¶¶ 25–26; Still Body Cam [Pl.'s Ex. O] at 00:00–00:55. Plaintiff—who turned out not to be the window-breaking suspect—sustained a serious head injury falling off the bicycle and was then transported to the Lea County Regional Hospital Emergency Department. ECFs 36/44 at ¶¶ 3, 28–30. Early the next morning on January 21, 2021, he was "transferred by air to a trauma center in Lubbock, Texas." *Id.* at ¶ 29. And on March 3, 2021, he was "discharged from medical care in Texas to return to New Mexico with his sister." *Id.* at ¶ 30.[4]

### B. The State Prosecution

"On March 3, 2021, Officer Marinovich filed a criminal complaint in Lea County Magistrate Court to secure a warrant for Albert's arrest." ECFs 36/44 at ¶ 31. The criminal complaint charged Plaintiff with "REO [resisting, evading or obstructing an officer] in violation of NMSA 1978, § 30-22-1, riding without lamps at night, and riding on wrong side of roadway in violation of, respectively, NMSA 1978, § 66-3-826, and § 66-3-705." *Id.* at ¶ 32. Later that day,

---

[4] The instant motions do not require the Court to analyze anything that happened on the street after Marinovich initiated the physical encounter following the brief foot pursuit. Considering that the physical encounter resulted in Plaintiff toppling from his bicycle, impacting the pavement at high speed, and immediately thereafter being taken into custody, the Court concludes that the physical encounter was the equivalent of an arrest for which probable cause was necessary.

4

a Lea County Magistrate Judge "signed a warrant for [Plaintiff's] arrest," finding "probable cause to charge [Plaintiff] with the[se] three (3) criminal offenses." *Id.* at ¶¶ 34–35.

Plaintiff's counsel entered an appearance in the criminal case on May 11, 2021, and the following day moved for a competency hearing. *New Mexico v. Barela*, No. M-26-MR-2021-00034, https://caselookup.nmcourts.gov. On May 26, 2021, the Magistrate Court set Plaintiff's conditions of release and advised him of his rights. *Id.* The case was ultimately transferred to district court on July 12, 2021. *Id.* On September 21, 2021, the district court dismissed Plaintiff's criminal charges without prejudice, finding him incompetent to stand trial. *Id.*

### C.  The Instant Litigation

Plaintiff subsequently filed suit in this Court, claiming that (a) Marinovich and Still violated the Fourth Amendment by unlawfully arresting him (Count I) and using excessive force on him (Count II); (b) the City of Hobbs and its Chief of Police failed to properly train and supervise the officers (Count III); (c) all Defendants violated the Fourth Amendment by maliciously prosecuting him because "[n]o probable cause supported [his] prosecution at the time of institution of legal process against him" (Count IV); (d) all Defendants are liable under state tort law (Count V); and (e) unspecified Defendants violated his rights under the New Mexico Civil Rights Act because "Plaintiff was maliciously prosecuted for criminal conduct without any probable cause" in contravention of the New Mexico constitution (Count VI). Compl. [ECF 1] at 5–9.

Defendants now request that this Court grant them summary judgment based on qualified immunity with respect to two of the federal claims: unlawful arrest (Count I) and malicious prosecution (Count IV). ECF 39. In addition, they request that Plaintiff's New Mexico Civil Rights Act claim for malicious prosecution (Count VI) be dismissed on the pleadings. ECF 46.

## II.  PARTIES' PRIMARY ARGUMENTS

### A.  Defendants' Contentions

Defendants contend that the officers are entitled to qualified immunity on Counts I and IV because their conduct did not violate Plaintiff's Fourth Amendment right to be free from unlawful arrest (Count I) or malicious prosecution (Count IV).  ECF 39 at 20–27.  Defendants argue that— because the officers had probable cause to believe Plaintiff "committed 2 separate traffic offenses in the Officer's presence as well as the separate misdemeanor offense of resisting, evading or obstructing an officer"—Plaintiff cannot establish a Fourth Amendment claim for either unlawful arrest or a malicious prosecution, as both claims require a lack of probable cause.  *Id.* at 20–27.

In addition, Defendants assert that Plaintiff's New Mexico Civil Rights Act claim for malicious prosecution under the New Mexico Constitution (Count VI) is barred because (1) the applicable criminal complaint was filed on March 3, 2021, and (2) the New Mexico Civil Rights Act excludes "[c]laims arising solely from acts or omissions that occurred prior to July 1, 2021," NMSA 1978, § 41-4A-12.  ECF 46 at 7–11.

### B.  Plaintiff's Contentions

For his part, Plaintiff contends that "there are material issues of fact in dispute regarding probable cause to stop and arrest [him]."  ECF 47 at 23.  Nevertheless, Plaintiff does not meaningfully address why the officers lacked probable cause to believe he committed the two bicycle-related traffic offenses or unlawfully fled from police.  *See id.* at 15–24; Tr. 3:6–9:25.  Indeed, at oral argument, Plaintiff's counsel did not dispute that Plaintiff rode his bicycle "at night without a headlamp or a rear reflector" and "on the opposite side of the road."  Tr. 7:18–25.  At most, Plaintiff seems to suggest that the officers lacked any such probable cause because Plaintiff (1) did not "create a public safety hazard" with his bicycle, ECF 47 at 18–19 (bracket omitted)

(quoting NMSA 1978, § 66-3-705(C)); and (2) "lacked the mental capacity to knowingly violate" the bicycle-related traffic rules or to unlawfully flee from the police, *id.* at 18–22; Tr. 8:1–9:25, 24:13–18.  In any event, Plaintiff appears to acknowledge that—if the Court "conclude[s] that there was probable cause for cause for any or all of the[se] three offenses"—then "there is absolutely no way that [he] can prevail" on Counts I and IV.  Tr. 25:18–26:9.

Plaintiff's primary focus with respect to his federal claims for unlawful arrest (Count I) and malicious prosecution (Count IV), however, seems to be that Defendants arrested and charged him "without any suspicion or probable cause to believe that he was [the man wanted for the domestic disturbance]"—and did so with the following subjective motivations: (1) a desire to engage in "racial profiling and . . . brutality to minorities"; (2) "in retaliation for him cursing and flipping off [Marinovich] and his prior dealings with the Hobbs Police Department"; and (3) to "cover up the excessive force used by the officers in [this] retaliation."  ECF 47 at 1–3, 15–22, 24; *see also* Tr. 3:6–27:23.  In addition, Plaintiff argues that, although the New Mexico Civil Rights Act did not take effect until July 1, 2021, the officers continued to engage in malicious prosecution under the New Mexico Constitution (Count VI) until September 21, 2021, because of their "omission to act" in not "bring[ing] these criminal charges [against someone who 'had been declared legally incompetent to stand trial . . . on at least three prior occasions'] to an end."  Tr 70:18–74:12; *see* ECF 48 at 3–11.

## III. APPLICABLE LAW

### A.  Summary Judgment Standard

"[A]t the summary judgment stage the [Court's] function is . . . to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Thus, at this stage, "[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome

of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the

nonmoving party on the evidence presented." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)

(internal quotation marks omitted).

"In applying this standard, [the Court] view[s] the evidence and the reasonable inferences

to be drawn from the evidence in the light most favorable to the nonmoving party." *Rowell v. Bd.*

*of Cnty. Comm'rs*, 978 F.3d 1165, 1171 (10th Cir. 2020) (quoting *Twigg v. Hawker Beechcraft*

*Corp.*, 659 F.3d 987, 997 (10th Cir. 2011)). Consequently, if the record "contains video evidence

of the incident in question," the Court will "accept the version of the facts portrayed in the video,

but only to the extent that it 'blatantly contradict[s]' the plaintiff's version of events." *Emmett v.*

*Armstrong*, 973 F.3d 1127, 1131 (10th Cir. 2020) (quoting *Scott v. Harris*, 550 U.S. 372, 380

(2007)). In addition, "[a]ll material facts set forth in the [summary judgment motion and response]

will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b).

### B. Qualified Immunity

Under 42 U.S.C. § 1983, any person acting under color of state law who "subjects, or

causes to be subjected, any citizen of the United States … to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."

Nevertheless, in "[b]alancing the purposes of § 1983 against the imperatives of public policy," the

Supreme Court has held that "police officers are entitled to a *qualified immunity* protecting them

from suit." *Nixon v. Fitzgerald*, 457 U.S. 731, 746 (1982) (emphasis added); *see also Harlow v.*

*Fitzgerald*, 457 U.S. 800, 806 (1982) (observing that "government officials are entitled to some

form of immunity from suits . . . . to shield them from undue interference with their duties and from potentially disabling threats of liability").

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' . . ." *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 744 (2011)). Consequently, "[w]hen a § 1983 defendant asserts qualified immunity, this affirmative defense 'creates a presumption that the defendant is immune from suit.'" *Estate of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020) (bracket omitted) (quoting *Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016)).

"When a defendant moves for summary judgment based on qualified immunity . . . . the burden shifts to the plaintiff to show the defendant is not entitled to immunity." *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016) (quoting *Roska ex rel. Roska v. Sneddon*, 437 F.3d 964, 971 (10th Cir. 2006)). "Thus, at summary judgment, [the Court] must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* at 900–01 (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)); *see also id.* at 901 (observing that "[i]f the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity" (quotation omitted)).

### C. Applicable Fourth Amendment Rights

The foregoing standard requires the Court first to ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Here, the constitutional rights at issue are the Fourth Amendment's proscriptions against (1) unlawful arrest and (2) malicious prosecution.[5]

#### 1. Unlawful Arrest

"Police officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in circumstances that are tense, uncertain, and rapidly evolving." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019) (quotation omitted). "To ensure that officers may go about their work without undue apprehension of being sued, [courts] generally review their conduct under objective standards of reasonableness." *Id.* "Thus, when reviewing an arrest, [courts] ask whether the circumstances, viewed objectively, justify the challenged action, and if so, conclude that action was reasonable *whatever* the subjective intent motivating the relevant officials." *Id.* (emphasis in original) (quotation and alteration omitted). "A particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest." *Id.* (quotation omitted).

#### a. Seizure of a Person

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all

---

[5] "In a technical sense, a Fourth Amendment claim against New Mexico officers is also a Fourteenth Amendment claim, because that is the amendment that incorporates the Fourth Amendment's protections against the states." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 n.3 (10th Cir. 2008). Nevertheless, the Court "avoid[s] this terminology here to reduce confusion." *Id.*

of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "[T]he 'seizure' of a 'person' . . . can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person.'" *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). "[T]he application of physical force to the body of a person with intent to restrain[6] is a seizure even if the person does not submit and is not subdued." *Id.* at 1003. But "[u]nlike a seizure by force, a seizure by acquisition of control involves either [1] voluntary submission to a show of authority or [2] the termination of freedom of movement [e.g., 'where the police seized a driver when he crashed into their roadblock']." *Id.* at 1001.

"[T]he test for [the] existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Furthermore, a "show of authority, such as an order for a suspect to halt[,] . . . . does not become an arrest *unless and until* the arrestee complies with the demand." *Torres*, 141 S. Ct. at 995 (emphasis added) (citing *Hodari D.*, 499 U.S. at 626). For instance, when "police cars with flashing lights . . . chased the decedent for 20 miles—surely an adequate 'show of authority'—but he did not stop until his fatal crash into a police-erected blockade," the Supreme Court "did not even consider the possibility that a seizure could have occurred during the course of the chase because, as [the court] explained, that 'show of authority' did not produce his stop." *Hodari D.*, 499 U.S. at 628 (discussing *Brower v. Inyo County*, 489 U.S. 593, 596 (1989)); *see also id.* at 629 ("assuming that [an officer's] pursuit . . . constituted a 'show of authority' enjoining

---

[6] *See Torres*, 141 S. Ct. at 998 (requiring an "*objective*[ ] manifest[ation]" of "an intent to restrain"—"for we rarely probe the subjective motivations of police officers in the Fourth Amendment context" (emphasis in original)).

[a suspect] to halt" and concluding that "since [the suspect] did not comply with that injunction he was not seized until he was tackled").

b.  *Probable Cause to Arrest*

"Of course, a seizure is just the first step in the analysis.  The Fourth Amendment does not forbid all or even most seizures—only unreasonable ones." *Torres*, 141 S. Ct. at 1003.  A seizure via "[a] warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001)).  The Supreme Court assesses probable cause as follows:

> To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.  Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules.  It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  Probable cause is not a high bar.

*Id.* (quotations omitted); *see also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (observing that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt" (quotation omitted)).  Thus, "[p]robable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Mocek v. City of Albuquerque*, 813 F.3d 912, 925 (10th Cir. 2015) (quotation omitted).  "This is true regardless of the officer's subjective intent."  *Id.*; *see also Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("The constitutionality of an arrest does not depend on the arresting officer's state of mind."); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

"Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for *any* offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S. Ct. at 584 n.2 (emphasis added).  Thus, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).  Moreover, so long as "an officer has probable cause to believe that an individual has committed *even a very minor criminal offense* in his presence, he may, without violating the Fourth Amendment, arrest the offender."  *Atwater*, 532 U.S. at 354 (emphasis added) (holding that police may make full custodial arrests for even fine-only offenses).[7]

### c.   *Relevant Criminal Offenses*

In New Mexico, "[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction."  NMSA 1978, § 66-3-705.  In addition, "[e]very bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least five hundred feet to the front and with a red reflector on the rear." § 66-3-707.  The violation of either bicycle provision is a "penalty assessment misdemeanor" that is subject to a $50 "penalty assessment." § 66-8-116; *see also* § 66-8-117 (discussing an "*arresting* officer['s]" options "at the time of *making an arrest* for any penalty assessment misdemeanor" (emphasis added)).  In addition, if a bicyclist (or anyone else) "intentionally flee[s], attempt[s] to evade or evad[es] an officer . . . [while] know[ing] that the officer is attempting to apprehend or arrest him," he is "guilty of a misdemeanor." § 30-22-1; *see also* § 31-19-1 (providing that a

---

[7] *See*, *e.g.*, *Brown v. Polk Cnty.*, 141 S. Ct. 1304, 1306–07 (2021) (Sotomayor, J., concurring in denial of cert.) (observing that "almost anyone can be arrested for something"—"[a]n unbuckled seatbelt, a noisy muffler, an unleashed dog: [a]ny one of countless petty misdemeanors might land you in jail" (quotation omitted)).

defendant convicted of a misdemeanor may be "imprisoned in the county jail for a definite term less than one year or to the payment of a fine of not more than one thousand dollars").

### 2.   Malicious Prosecution

"[A] Fourth Amendment claim under § 1983 for malicious prosecution [is] sometimes referred to as a claim for unreasonable seizure pursuant to legal process." *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022).  "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Id.* at 1337–38 (observing that "nearly every other Circuit has held that malicious prosecution is actionable under the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be 'seized' without probable cause" (quotation and bracket omitted).[8]

### D.  New Mexico Civil Rights Act

The New Mexico Civil Rights Act, NMSA 1978, §§ 41-4A-1 to 41-4A-13, prohibits state and local government officials from subjecting others to a "deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico."  § 41-4A-3 (also noting that corresponding claims "shall be brought exclusively against a public body"); *see also* § 41-4A-4 ("[p]rohibiting the use of the defense of qualified immunity").  "Claims arising solely from acts or omissions that occurred *prior to* July 1, 2021 may *not* be brought pursuant to the New Mexico Civil Rights Act."  § 41-4A-12 (emphasis added).

---

[8] *See also Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("affirm[ing] the district court's dismissal of [a] plaintiff's Fourth Amendment claim of malicious prosecution"—reasoning that (1) "lack of probable cause to initiate criminal proceedings [was] an essential element" of such a claim and (2) probable cause to initiate criminal proceedings existed, notwithstanding "the false and embellished testimony provided by [a detective] to the grand jury [which] was not material to the grand jury's probable cause determination").

The New Mexico Supreme Court has not expressly recognized, pursuant to the New Mexico Civil Rights Act or otherwise, a state *constitutional* claim for malicious prosecution.[9] Nevertheless, "[t]he Fourth Amendment to the United States Constitution and article II, section 10 [in the bill of rights] of the New Mexico Constitution make analogous provision for the protection of the people against unreasonable searches and seizures." *State v. Neal*, 2007-NMSC-043, ¶ 16, 142 N.M. 176, 181.[10]

New Mexico courts have previously wrestled with the "embarrassing diversity of judicial opinion over the composition, or even existence, of a claim for 'malicious prosecution' founded in § 1983." *Benavidez*, 2015-NMCA-065, ¶ 16, (quoting *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000)). But New Mexico courts have acknowledged that "in the Tenth Circuit, analysis of a § 1983 malicious prosecution claim [under the U.S. Constitution] is guided by the following elements: '(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the

---

[9] New Mexico has, however, previously recognized the *tort* of malicious prosecution. *Durham v. Guest*, 2009-NMSC-007, ¶ 18, 145 N.M. 694, 698. But in 1998 it "combined the torts of abuse of process and malicious prosecution and restated them as a single cause of action known as malicious abuse of process." *Id.* And "[New Mexico tort] law is clear that an improper motive by itself cannot sustain a malicious abuse of process [tort] claim." *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 36, 282 P.3d 758, 767 (concluding that "[b]ecause [a plaintiff] challenged only the filing of [the proceeding]"—and because the proceeding "was supported by probable cause"—the plaintiff "did not establish an essential element of his malicious abuse of process [tort] claim as a matter of law"); *see also DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-1, ¶ 20, 124 N.M. 512, 520 ("[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for [the tort of] malicious abuse of process, even if it is the result of a malicious motive.").

[10] Plaintiff alleges that he was "maliciously prosecuted for criminal conduct without any probable cause" in violation of "[his] *due process rights* under Article 2, Section 18 [of the bill of rights] of the New Mexico Constitution." Compl. at ¶ 61 (emphasis added). But New Mexico—at least in applying federal law—adopts the view that neither "procedural due process rights" nor "substantive due process standards" apply to malicious prosecution claims. *Benavidez v. Shutiva*, 2015-NMCA-065, ¶¶ 15–18, 350 P.3d 1234, 1242–43 (holding that "to the extent Plaintiff's malicious prosecution claim was based on the Fourteenth Amendment, it was properly dismissed"). And New Mexico would likely adopt a similar view concerning the due process clause of the New Mexico Constitution. *See, e.g., id.*; *Morris v. Brandenburg*, 2016-NMSC-027, ¶ 18, 376 P.3d 836, 844 (observing that "[New Mexico's] constitution's due process guarantees are analogous to the due process guarantees provided under the United States Constitution"). In any event, the Court is not aware of—and Plaintiff does not cite—any New Mexico cases suggesting that New Mexico would permit a malicious prosecution claim founded on the due process clause of the New Mexico Constitution. *See* ECF 47.

original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.'" *Id.* at ¶ 19 (quoting *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008)).  In addition, the Court is not aware of—and Plaintiff does not cite—any authority suggesting that an analysis of a New Mexico Civil Rights Act malicious prosecution claim under the New Mexico Constitution would be any different.  *See* ECF 47.[11]

## IV.  ANALYSIS

For the following reasons, the Court concludes that Plaintiff has not offered evidence from which a reasonable jury could find that Hobbs police officers arrested and charged him without probable cause.  The Court therefore holds as a matter of law that these officers did not violate Plaintiff's Fourth Amendment right against unlawful arrest (Count I) or malicious prosecution (Count IV).  The Court also holds that Plaintiff's New Mexico Civil Rights Act claim for malicious prosecution (Count VI) must be dismissed because (1) Marinovich initiated charges before the Act's July 1, 2021, effective date, (2) the Act expressly forecloses liability for events occurring prior to its effective date, and (3) probable cause supported his prosecution.

### A.  The Officers Had Probable Cause to Arrest and Charge Plaintiff

"[*W*]*hatever* the subjective intent motivating the [officers]" might have been, they had probable cause under the Fourth Amendment to arrest and charge Plaintiff for three misdemeanor offenses.  *Nieves*, 139 S. Ct. at 1725 (emphasis in original).

---

[11] "Although [the New Mexico Supreme Court] ha[s] the power to provide more liberty than is mandated by the United States Constitution when interpreting analogous provisions in [the New Mexico] constitution, the burden is on the party seeking relief under the state constitution to provide reasons for interpreting the state provisions differently from the federal provisions when there is no established precedent." *Morris*, 2016-NMSC-027, ¶ 19 (quotations and bracket omitted) (also noting that New Mexico courts "first examine whether an asserted right is protected under an equivalent provision of the United States Constitution" and "[i]f the right is protected, then, under the New Mexico Constitution, the claim is not reached").

### 1.   Plaintiff Was Seized When Marinovich Initiated Physical Contact

Because Plaintiff did not "voluntar[ily] submi[t] to [Marinovich's] show of authority," Plaintiff was not seized for Fourth Amendment purposes until "the application of physical force to [his] body." *Torres*, 141 S. Ct. at 1001, 1003.  Although Plaintiff asserts that he was seized "as soon as [Marinovich] got out of his vehicle," Tr. 12:21–22 (invoking *Mendenhall*, 446 U.S. 544), the Court relies on the well-established rule that if a suspect does not "comply with [an] injunction [to halt] he [is] not seized until [the application of physical force to his body]." *Hodari D.*, 499 U.S. at 628; *see also Torres*, 141 S. Ct. at 995 (reaffirming *Hodari D.'s* central holding that a seizure "requires *either* physical force . . . or, where that is absent, *submission* to the assertion of authority" (emphasis in original) (quoting *Hodari D.*, 499 U.S. at 626)).  Thus, even though Marinovich attempted to detain Plaintiff at two earlier points, Plaintiff was not seized until Marinovich physically grabbed him.  *Id.* at 1003.

### 2.   Marinovich Had Probable Cause to Seize Plaintiff

At the time of this seizure, Marinovich had probable cause to detain and arrest Plaintiff for violating the two bicycle-related traffic statutes.  The video evidence rules out any genuine issue of fact as to whether Plaintiff violated these statutes.  First, these videos clearly show—beyond dispute—that Plaintiff was riding his bicycle at night without the required "lamp on the front . . . emit[ting] a white light visible from a distance of at least five hundred feet" and the required "red reflector on the rear," NMSA 1978, § 66-3-707.  *See* MDC 1 at 00:00–00:34; MDC 2 at 00:27–00:36; SDC at 00:00–00:48; *see also* Tr. 7:18–25 (Plaintiff's counsel conceding that Plaintiff rode his bicycle "at night without a headlamp or a rear reflector").  The Court notes that the criminal complaint signed by Marinovich cited § 66-3-826 (which governs "[l]amps on other vehicles and equipment") instead of § 66-3-707 (which governs "[l]amps and other equipment on *bicycles*"

(emphasis added)).   *See* ECF 39-13.[12]   But such an error is immaterial under the Fourth Amendment so long as Marinovich had probable cause to believe Plaintiff committed *any* offense. *See*, *e.g.*, *Wesby*, 138 S. Ct. at 584 n.2 (observing that "an arrest is lawful if the officer had probable cause to arrest for *any* offense, not just the offense cited at the time of arrest or booking" (emphasis added)).   And because there is no genuine dispute that Marinovich had probable cause to believe Plaintiff rode his bicycle at night without the required front lamp and rear reflector in violation of § 66-3-707, the "warrantless arrest [was] reasonable." *Id.* at 586.

Regarding the second bicycle-related statute, as the Court pointed out at the hearing, Plaintiff was technically riding his bicycle on the sidewalk, and not the "roadway," § 66-3-705, when the videos began.   *See* Tr. 42:24–43:2; MDC 1 at 00:00–00:20.   Nevertheless, the videos incontrovertibly show that Plaintiff thereafter rode his bike against traffic and all the way across a four-lane street in a manner that violates the statute.   *See* MDC 2 at 00:28–00:36; SDC at 00:30–00:37.   Thus, regardless of whether Marinovich would have had probable cause at the very first attempted stop to detain Plaintiff for not riding his bicycle "as near to the right side of the roadway as practicable," § 66-3-705, Marinovich most certainly had probable cause to do so when he ultimately thereafter seized Plaintiff.

There is also no genuinely-disputed issue of fact that, at the time of Plaintiff's seizure, Marinovich had probable cause to arrest him for "[r]esisting, evading or obstructing an officer." § 30-22-1.   Indeed, Marinovich was in a fully marked police unit, had twice engaged his emergency lights, was in full uniform, had ordered Plaintiff to stop, and instead Plaintiff endeavored to evade apprehension.   *See* MDC 1 at 00:00–0035; MDC 2 at 00:00–00:36; SDC at

---

[12] Although the criminal complaint miscites the precise statute, the substance of the complaint nevertheless refers to the proper statute.   *See* ECF 39-13 at 2 (alleging that because Plaintiff had been "riding a bike without a lamp on the front of his bicycle, there [was] probable cause to charge him with Lamps and Other Equipment On Bicycles [i.e., § 66-3-707]").

00:00-00:48; ECFs 36/44 at ¶ 21. Consequently, the Court concludes that the video and other evidence in the record demonstrate that there is no genuine issue of material fact that Plaintiff "intentionally fle[d] [or] attempt[ed] to evade" Marinovich while having "knowledge that [Marinovich] [was] attempting to apprehend or arrest him." § 30-22-1. Thus, there is no genuine dispute that Marinovich had probable cause—i.e., an objective "reasonable ground for belief"— to believe that Plaintiff was intentionally attempting to evade Marinovich's efforts to stop him. *Pringle*, 540 U.S. at 371.

### 3. Plaintiff's Mental Condition, Ethnicity, and Speech Do Not Negate Probable Cause

As Plaintiff has conceded, the two bicycle-related traffic offenses are "strict liability offenses" that impose no *mens rea* requirement. *See* Tr. 8:22–9:2. Although § 30-22-1 requires "knowledge that the officer is attempting to apprehend" and a corresponding intent to evade, the videos and the rest of the summary judgment evidence demonstrate that there is no fact issue as to whether there was at least probable cause to arrest Plaintiff for violating this statute. *See*, *e.g.*, MDC 1 at 00:00–0035; MDC 2 at 00:00–00:36; SDC at 00:00-00:48; ECFs 36/44 at ¶ 21. Whether Plaintiff's mental condition might make convicting him beyond a reasonable doubt at trial somewhat difficult does not mean there was not probable to arrest and charge him with "resisting, evading or obstructing" under § 30-22-1. The difference between the proof required for probable cause and the proof required for reasonable doubt is plain. Furthermore, that Plaintiff's mental condition apparently caused a state district judge to find him not competent to stand trial also does not vitiate the finding that Marinovich had probable cause to arrest Plaintiff.

Plaintiff has repeatedly emphasized that (1) the Hobbs Police Department over-polices the minority community and (2) the officers took their enforcement action that night in retaliation for Plaintiff flipping them off and cursing at them. *See*, *e.g.*, ECF 47 at 2–3, 17–24; Tr. 5:25–6:18.

But Plaintiff has filed no claims in this case for selective prosecution, racial profiling, or retaliation. *See* Compl. Furthermore, as the Court has emphasized in this order, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813.[13]

### 4.   Plaintiff Was Not Unlawfully Arrested or Maliciously Prosecuted

As noted, "[t]he Fourth Amendment does not forbid all or even most seizures—only unreasonable ones," *Torres*, 141 S. Ct. at 1003—and a "warrantless arrest is reasonable if the officer has probable cause," *Wesby*, 138 S. Ct. at 586. Consequently, because the officers had probable cause to arrest Plaintiff for three misdemeanor offenses (i.e., riding a bicycle without proper lighting, riding on the wrong side of the road, and unlawfully evading an officer), they did not violate Plaintiff's Fourth Amendment right against unlawful arrest (Count I). Count I must therefore be dismissed.

Similarly, because "the gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges *without probable cause*," *Thompson*, 142 S. Ct. at 1337–38 (emphasis added), the officers likewise did not violate Plaintiff's Fourth Amendment right against malicious prosecution (Count IV). The Court notes that Plaintiff conceded that none of the facts that Marinovich *included* in the criminal complaint was knowingly false. Tr. 17:1–11. In addition, none of the facts that Marinovich is alleged to have *omitted* from the criminal complaint would have vitiated probable cause if they had been included.[14] Thus, there

---

[13] The Court also observes that—because there is no genuinely-disputed and material fact issue as to whether Plaintiff committed the traffic offenses or "the resisting evading or obstructing" offense—any question about whether Marinovich recognized Plaintiff prior to seizing him is immaterial. Similarly, because Marinovich had probable cause to believe Plaintiff committed these offenses, the Court need not address whether Marinovich alternatively or additionally had a reasonable suspicion to detain the bicyclist to investigate the window-breaking domestic disturbance that had occurred at a nearby residence.

[14] *See, e.g.*, ECF 47 at 22 (Plaintiff asserting that Marinovich failed to stated that (1) "the officers knew [Plaintiff] had nothing to do with the [window-breaking] incident"; (2) "[Plaintiff] was not wearing a blue shirt that dispatch indicated [he] was wearing"; (3) "[Plaintiff] was decades older, and much smaller than [the window-breaker]"; and (4) "[Plaintiff] was cognitively impaired, and [thus] did not have the mental capacity to commit such criminal activity").

was still probable cause to support the magistrate judge's issuance of a warrant for all three offenses. And because the absence of probable cause is also an essential element of a Fourth Amendment claim for malicious prosecution, Count IV must also be dismissed.

### B. Marinovich Initiated Charges before July 1, 2021, and with Probable Cause

Count VI of Plaintiff's Complaint alleges that "Plaintiff's rights have been violated under the New Mexico Civil Rights Act among other things [sic] Plaintiff was maliciously prosecuted for criminal conduct without any probable cause." Compl. at 9. Although Count VI is broadly drafted, the only specific example it cites involves malicious prosecution. *See id*.; *see also* ECF 47 (Plaintiff neither asserting nor suggesting that Count VI might include additional state constitutional violations under the New Mexico Civil Rights Act). The Court construes Count VI, therefore, as limited to the allegation that Defendants contravened the New Mexico Constitution by maliciously prosecuting Plaintiff.[15]

The Court treats Defendants' "motion for judgment on the pleadings [ECF 46] . . . as a motion to dismiss under Rule 12(b)(6)." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). To survive such a motion for judgment on the pleadings, the Complaint must "contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). A court must therefore "'assume the veracity' of the well-pleaded factual allegations 'and then determine

---

[15] The Court is not considering the Amended Tort Claim Notice [ECF 67-1] that Defendants submitted on November 7, 2022, the day before the oral argument hearing. That notice was 1.5 years old and should have been included in the ordinary motion practice. The Court concludes that considering such a belated submission would not be fair to Plaintiff. As for the legislative history materials [ECF 67-2] that were submitted in conjunction with this notice, the Court does not consider the history to be persuasive—although the Court fully credits defense counsel's representation that this is all the relevant legislative history available. The Court will instead rely solely on the natural and accepted meaning of the plain language of § 41-4A-12 of the New Mexico Civil Rights Act.

21

whether they plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Plaintiff's Complaint contains no allegation that Marinovich or Still committed any "act" or "omission" on or after July 1, 2021—the date on which the New Mexico Claims Act became effective—in furtherance of the alleged continued malicious prosecution of Plaintiff.  *See* Compl. Indeed, the gravamen of a malicious prosecution claim is "the wrongful *initiation* of charges without probable cause."  *Thompson*, 142 S. Ct. at 1337–38 (emphasis added).[16]  And Marinovich *initiated* charges against Plaintiff on March 3, 2021—and did so *with* probable cause, as discussed in Section IV(A) above.  The Complaint simply does not plausibly suggest that Defendants maliciously prosecuted Plaintiff in contravention of the New Mexico Constitution at any point on or after July 1, 2021.  Consequently, Count VI does not state a claim upon which relief may be granted, and the Court will order its dismissal.

In addition, the Court will direct that the dismissal of Count VI be with prejudice.  *See N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1235 n.22 (10th Cir. 2021) (observing that "dismissal with prejudice is generally appropriate . . . when amending the complaint would be futile").  The Court will do so because Plaintiff has not pointed to any conceivably admissible evidence of acts or omissions by the officers occurring on or after July 1, 2021, that would render them liable for malicious prosecution under the New Mexico Constitution.  For instance, Plaintiff conceded at oral argument that neither officer testified at any point in the prosecution and that, following disclosure of the evaluation of the mental health provider, the prosecutor stipulated to Plaintiff's incompetence to stand trial.  *See* Tr. 71:7–74:12.  In addition, the public record shows

---

[16] Although this is the federal constitutional standard, the Court has no reason to believe such a claim would be viewed any differently under the New Mexico Constitution—and Plaintiff has not met his "burden . . . to provide reasons for interpreting the [applicable] state [constitutional] provisions differently from the federal provisions" in this regard. *Morris*, 2016-NMSC-027, ¶ 19.

that the involvement of the officers with respect to the criminal prosecution *ceased* with the entry of appearance of the prosecutor in May 2021.  *See* ECF 46-2.  Moreover, Plaintiff's response brief was utterly silent on any act or omission by either officer occurring on or after July 1, 2021.  Only at oral argument—and for the very first time—did Plaintiff allege that both officers "omitted" to direct the district attorney's office to dismiss the prosecution between July 1, 2021, and the day it was finally dismissed, September 21, 2021.  Tr 70:18–74:12.  But the Court is unaware of—and Plaintiff has failed to cite—any authority that imposes a legal duty on a police officer to instruct a prosecutor to dismiss a case, or even gives the officer legal authority to do so.

Finally—even if Plaintiff somehow managed to state a claim for relief in Count VI or the Court's dismissal of this Count with prejudice were somehow unwarranted—the Court will still dismiss whatever might remain of Count VI on summary judgment grounds.  *See Kannady v. City of Kiowa*, 590 F.3d 1161, 1170 (10th Cir. 2010) (observing that "[a] district court may grant summary judgment on a ground not formally raised in a summary judgment motion, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence" (quotation omitted)).  Plaintiff was on notice that he had to come forward with evidence supporting his allegations that the officers lacked any probable cause under the Fourth Amendment to arrest or prosecute him.  But despite such notice, the Court has found that the officers had such probable cause.  *See supra* Section IV(A).  And as noted, the absence of probable cause is an essential element of a Fourth Amendment malicious prosecution claim.  Plaintiff, however, has not met his burden to convince this Court that a malicious prosecution claim under the New Mexico Constitution—assuming such a claim even exists—would not also require the absence of probable cause.  Consequently, the Court will dismiss Count VI with prejudice on the pleadings and alternatively on summary judgment grounds.

## V.   CONCLUSION

For the foregoing reasons, the Court holds that the officers are entitled to summary judgment based on qualified immunity with respect to Counts I and IV because the officers had probable cause to arrest and charge Plaintiff—and thus did not violate Plaintiff's Fourth Amendment right against unlawful arrest or malicious prosecution.  In addition, the Court holds that Defendants are entitled to judgment on the pleadings, and alternatively to summary judgment, on Plaintiff's New Mexico Civil Rights Act malicious prosecution claim (Count VI) because Officer Marinovich initiated charges before the Act's July 1, 2021, effective date and with probable cause.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary [ECF 39] is **GRANTED**.  Counts I and IV of Plaintiff's Complaint [ECF 1 at 5–6, 8] are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment on the Pleadings [ECF 46] is **GRANTED**.  Count VI of Plaintiff's Complaint [ECF 1 at 9] is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

24